UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| RENEE McHENRY<br>(Social Security No. XXX-XX-3440),<br><br>          Plaintiff,<br><br>          v.<br><br>MICHAEL J. ASTRUE, Commissioner of the<br>Social Security Administration,<br><br>          Defendant. | 4:09-cv-117-WGH-RLY |

## MEMORANDUM DECISION AND ORDER

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 11, 24) and an Order of Reference entered by Chief District Judge Richard L. Young on April 9, 2010 (Docket No. 25).

### I. Statement of the Case

Plaintiff, Renee McHenry, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on November 29, 2006, alleging disability since April 1, 2006.[1] (R. 70-77). The agency denied Plaintiff's applications both

---

[1] Plaintiff applied for Widow's Insurance benefits on the same date. (R. 78-84).

initially and on reconsideration. (R. 52-59, 61-66). Plaintiff appeared and testified at a hearing before Administrative Law Judge D. Lyndell Pickett ("ALJ") on March 30, 2009. (R. 25-47). Plaintiff was represented by an attorney; also testifying was a vocational expert. (R. 25). On May 29, 2009, the ALJ issued his opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform her past work as a retail store manager. (R. 15-24). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 8-10). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on September 8, 2009, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Born on March 14, 1956, Plaintiff was 53 years old at the time of the ALJ's decision, with a high school education. (R. 24). Her past relevant work experience included jobs as a steel scrap yard worker, grocery store retail manager, and hairdresser. (R. 23).

### B. Medical Evidence

#### 1. Plaintiff's Impairments

On July 22, 1999, an MRI of Plaintiff's lumbar back revealed degenerative facet disease at L4-5 with a small cyst, but no stenosis or nerve root compression. (R. 138-39). Set Shahbabian, M.D., diagnosed Plaintiff with a herniated disc at L4-5 and performed disc decompression surgery on August 26,

1999. (R. 133-34). He later wrote that "during surgery, I found a significant degeneration in the disc of L4-L5." (R. 136).

At a postoperative visit on September 29, 1999, Plaintiff reported that she was "doing pretty well," could bend over, and had no radicular pain in her legs. (R. 136). Dr. Shahbabian was optimistic that she would "do very well." (R. 136).

Plaintiff did not return to Dr. Shahbabian until April 1, 2006, nearly seven years later. (R. 176-77). She informed Dr. Shahbabian that for about one and one-half years after the 1999 surgery, she did fairly well. (R. 176). Thereafter, she gradually started to have aches and pains. (R. 176). Plaintiff claimed that she was unable to walk any distances and could not sit for any length of time. (R. 176). She told Dr. Shahbabian that "[s]he used to work about 14-15 hours a day but she can barely work about 4 hours before she is finished and has to go home." (R. 176). She reported that she was unable to lie on her back, and instead needed to lie on her side or her stomach. (R. 176). On examination, Dr. Shahbabian observed that Plaintiff had a normal gait, a limited range of motion in her lower back, a negative straight leg raise test, no muscle atrophy or spasm, and no definite sensory impairment. (R. 176). Dr. Shahbabian concluded that "[o]bviously, she has a progressive problem in the lumbar spine. We know that in L4-L5, there was disease. . . . We know that the L4-L5 is the most moveable joint and probably, that is the most responsible portion for the patient's problem." (R. 177). Dr. Shahbabian ordered an MRI of the lumbar spine. (R. 177).

The MRI performed on April 4, 2006, showed that "[a]t the L4-5 level, there is disc space narrowing, disc desiccation, moderate diffuse disc bulge and

moderate bilateral facet hypertrophy. There is focal broad based left foraminal disc protrusion resulting in mild narrowing of the left L4 neural foramen." (R. 174).

On May 8, 2006, Plaintiff followed up with Dr. Shahbabian, who interpreted her MRI as indicating lumbar stenosis at L4-5 with the nerve roots being compromised. (R. 172). Dr. Shahbabian indicated that Plaintiff needed fusion surgery at L4-5. (R. 172). He advised that there was about a 90-92% chance of satisfactory results. (R. 172). Dr. Shahbabian noted that Plaintiff was smoking up to two packs of cigarettes per day, and that if she did not stop smoking, it would increase the failure rate of back surgery. (R. 172). He told Plaintiff she needed to stop smoking. (R. 172).

On October 5, 2006, Dr. Shahbabian operated on Plaintiff's lumbar spine and fused her vertebrae from L4-S1. (R. 146-47). Specifically, Dr. Shahbabian performed an extensive decompressive lumbar laminectomy of L4 and L5, a foraminotomy of bilateral L5 root, insertion of pedicle screw with internal fixation of L4 and L5, and posterolateral fusion of L4 down to S1. (R. 146). In the Operative Report, Dr. Shahbabian wrote that "[t]he instability of L4-L5 was very obvious." (R. 147).

On November 3, 2006, Plaintiff followed up with Dr. Shahbabian, and reported that she was in more pain than before her surgery. (R. 168). She told Dr. Shahbabian that she was not using her back brace because it bothered her back. (R. 168). Dr. Shahbabian explained to Plaintiff that it was "imperative that she use her brace." (R. 168).

On December 19, 2006, Dr. Shahbabian noted that Plaintiff was "definitely better" than the last time he saw her. (R. 167). Nonetheless, she reported that she could not lie on her back, sit for more than 15 minutes, or stand or walk around. (R. 167). Dr. Shahbabian noted that Plaintiff's recovery was very slow and that it was expected that she would have significant residual discomfort. (R. 167). He opined that he was "becoming more doubtful that she will get involved in any gainful employment." (R. 167).

On January 22, 2007, Dr. Shahbabian wrote a letter in response to a request from Plaintiff's attorney, in which he referenced Plaintiff's two back surgeries and reiterated the limitations Plaintiff had reported on December 19, 2006, and his opinion that she was unable to engage in any gainful employment. (R. 260-61).

On January 31, 2007, Jean Perrin, M.D., examined Plaintiff at the request of the Social Security Administration. (R. 156-61). Plaintiff told Dr. Perrin that she could not sit for any length of time, could do more standing than sitting, and could not lie down without discomfort. (R. 156). Plaintiff reported a 30-year history of smoking three/fourths of a pack of cigarettes a day. (R. 156). Dr. Perrin observed that Plaintiff's gait was slow and antalgic on the left, but that when she left the office, Dr. Perrin "could just barely notice a limp." (R. 157). Plaintiff was taking Lortab every four hours and Flexeril. (R. 157). On examination, Plaintiff exhibited no lumbar muscle spasm or tenderness; limited flexion, extension, and bending of her lumbar spine; a negative straight leg raise test; and a negative neurological test. (R. 158-59, 161). Dr. Perrin noted that

Plaintiff appeared comfortable in the seated and supine positions. (R. 157). Dr. Perrin opined that Plaintiff could work eight hours a day seated, standing, or walking, but that she would need to vary her position and should not do repetitive lifting. (R. 160). Dr. Perrin indicated that Plaintiff could return to her work as a hairdresser at a slower pace than she was at prior to her surgery. (R. 160).

On February 21, 2007, Plaintiff underwent a consultative evaluation with Robert Kurzhals, Ph.D., on referral from the state agency. (R. 162-65). Dr. Kurzhals observed that Plaintiff got up and down throughout the evaluation due to pain, and that she walked slowly and with a limp. (R. 164). Dr. Kurzhals also observed that Plaintiff was fairly cheerful despite her complaints of pain. (R. 164).

On February 26, 2007, Plaintiff returned to Dr. Shahbabian, who noted that she was doing somewhat better, but she still could not lie on her back. (R. 166). He noted that she would see him only periodically, if needed, and that she was entitled to long-term pain medication. (R. 166).

On March 11, 2007, Plaintiff saw Leslie H. Glick, M.D. (R. 212-17). He noted that Plaintiff exhibited no weakness, tingling, swelling, muscle or joint pain, inflammation, restriction of motion, atrophy, or backache. (R. 212, 214). Plaintiff exhibited a normal range of motion in her extremities, a normal gait, and normal neurological and straight leg raise testing. (R. 215). Plaintiff reported smoking two packs of cigarettes a day. (R. 213). Dr. Glick noted that Plaintiff

took Ibuprofen for her back and indicated that Plaintiff was "doing well" without any "distinct problems . . . identified on exam." (R. 212, 217).

On November 14, 2008, Plaintiff returned to Dr. Glick for complaints of migraines, indigestion, back pain, and anxiety. (R. 208-11). Plaintiff was taking Advil for her back pain. (R. 208). Neurological testing was normal (R. 209), and Dr. Glick did not note any limitations resulting from Plaintiff's back problems. (R. 209-11).

On February 26, 2009, Dr. Glick completed a physical capacities evaluation, in which she opined that Plaintiff could sit, stand, or walk for zero hours at a time and zero hours in an eight-hour day; lift five pounds occasionally, but never lift more than five pounds; and engage in simple grasping, but no pushing or pulling of arm controls or fine manipulation; and occasionally crawl, but never bend, squat, climb, or reach. (R. 264). Dr. Glick indicated that Plaintiff would have a mild restriction in driving an automobile and total restriction of activities involving unprotected heights, moving machinery, exposure to marked changes in temperature and humidity; and exposure to dust, fumes, and gases. (R. 264).

### 2. State Agency Review

On February 28, 2007, B. Randal Horton, Psy.D., completed a Psychiatric Review Technique and concluded that Plaintiff had no severe mental impairment. (R. 179-92).

On March 2, 2007, J. Sands, M.D., a reviewing physician with the state agency, reviewed Plaintiff's medical records. (R. 198-205). Dr. Sands opined that

Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; stand, walk, and sit about six hours in an eight-hour workday; engage in unlimited pushing and pulling; frequently balance and kneel; and occasionally climb, stoop, crouch, and crawl. (R. 199-200). Dr. Sands found that Plaintiff's subjective allegations were only partially credible and that the evidence in the file was more consistent with his assessment. (R. 203).

On April 25, 2007, J.V. Corcoran, M.D., affirmed Dr. Sands' assessment as written. (R. 207).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V. The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through June 30, 2011; Plaintiff also had not engaged in substantial gainful activity since the alleged onset date. (R. 17-18). The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had two impairments that are classified as severe: status post two lumbar surgeries; degenerative disc disease. (R. 18). The ALJ

concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully credible. (R. 22). Consequently, the ALJ concluded that Plaintiff retained the RFC for light work, with the ability to sit or stand as needed, occasionally balance, stoop, kneel, crouch, or climb ramps or stairs, and never crawl or climb ladders, ropes, or scaffolds. (R. 21). The ALJ opined that Plaintiff retained the RFC to perform her past work as a retail store manager. (R. 23). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 24).

## VI. Issues

Plaintiff has essentially raised three issues. The issues are as follows:

1. Whether the ALJ erred in his consideration of Dr. Perrin's opinions.

2. Whether the ALJ's credibility determination is patently wrong.

3. Whether the ALJ's analysis of the sit-stand option was proper.

**Issue 1:     Whether the ALJ erred in his consideration of Dr. Perrin's opinions.**

Plaintiff first argues that the ALJ erred by failing to incorporate all of the limitations listed by Dr. Perrin into his assessment of Plaintiff's RFC. Specifically, the ALJ found Dr. Perrin's opinion "persuasive" that Plaintiff "should not do repetitive lifting." (R. 22). Yet, the ALJ's opinion does not limit Plaintiff to no repetitive lifting. This was harmless error. Plaintiff has pointed out that many of the jobs the vocational expert testified Plaintiff could do required frequent handling and that they, therefore, must have also required frequent lifting

-10-

because handling implies lifting. However, Plaintiff has cited to no legal authority which supports his assertion that the jobs the vocational expert listed require frequent lifting. Hence, Plaintiff's argument is without merit.

**Issue 2:     Whether the ALJ's credibility determination is patently wrong.**

Plaintiff also finds fault in the ALJ's assessment of her credibility. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's

> symptoms to determine the extent to which the symptoms limit the
> individual's ability to do basic work activities. For this purpose,
> whenever the individual's statements about the intensity,
> persistence, or functionally limiting effects of pain or other symptoms
> are not substantiated by objective medical evidence, *the adjudicator
> must make a finding on the credibility of the individual's statements
> based on a consideration of the entire case record. This includes the
> medical signs and laboratory findings, the individual's own statements
> about the symptoms, any statements and other information provided
> by treating or examining physicians or psychologists and other
> persons about the symptoms and how they affect the individual, and
> any other relevant evidence in the case record.* This requirement for a
> finding on the credibility of the individual's statements about
> symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and
> 416.929(c)(4). These provisions of the regulations provide that an
> individual's symptoms, including pain, will be determined to
> diminish the individual's capacity for basic work activities to the
> extent that the individual's alleged functional limitations and
> restrictions due to symptoms can reasonably be accepted as
> consistent with the objective medical evidence and other evidence in
> the case record.

SSR 96-7p (emphasis added). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate

-12-

pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

> In this case, the ALJ's credibility determination was as follows:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant was not seen by any physician for treatment from February 2007 through March 2008 and since March 2008 she has only been one other time in November 2008 by her internist. In February 2007, when consultatively examined there was no evidence of any strength, motor, or neurological deficits. In March 2008, the claimant denied weakness, tingling, or urinary incontinence. She had a normal gait and station, there was no evidence of muscle tenderness, she had full range of motion of the spine, normal strength and function of the extremities, and negative straight leg raise testing.

(R. 22). Plaintiff argues that the credibility determination did not list each of the seven factors listed in 20 C.F.R. § 404.1529. The Court notes that the ALJ did not list, in order, all of these seven factors. However, there are references made throughout the entirety of the ALJ's opinion to many of these factors and why an evaluation of them led the ALJ to conclude that Plaintiff was not fully credible. Specifically, the ALJ referenced Plaintiff's failure to comply with the recommendations of her medical providers, including wearing a back brace and quitting smoking. (R. 18). Plaintiff's failure to comply is one indication that her

-13-

symptoms were not as severe as she claimed. Additionally, the ALJ referenced Plaintiff's gap in treatment history from February 2007 to March 2008. (R. 22). And the ALJ noted that Plaintiff's response to her pain was to take 20 Flexeril and 4-5 Vicodin per month. (R. 20). This gap in treatment as well as the rather conservative treatment by use of only moderate pain medication is evidence that the ALJ reasonably relied upon to conclude that Plaintiff's complaints were not fully credible. Finally, the ALJ noted that Plaintiff displayed generally normal objective medical findings (R. 22), and when the Plaintiff completed her exam with Dr. Perrin, her limp was almost unnoticeable as she left the office (R. 19). The lack of objective medical evidence to support her complaints as well as the disappearance of her limp is some evidence that bears upon Plaintiff's credibility. Taken as a whole, the Court can trace the path of the ALJ's reasoning, and the credibility determination was clearly not patently wrong.

**Issue 3:    Whether the ALJ's analysis of the sit-stand option was proper.**

Finally, Plaintiff argues that the ALJ erred by failing to specify how frequently Plaintiff would need to alternate sitting and standing. Plaintiff argues that SSR 96-9p requires an ALJ to specify how frequently an individual with a sit/stand option must be allowed to alternate between sitting and standing. Specifically, SSR 96-9p explains:

> **Alternate sitting and standing:** An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC

> assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

However, this social security ruling only applies to individuals with a RFC for less than a full range of *sedentary* work. Even taking into consideration all of Plaintiff's impairments, she can still perform less than the full range of *light* work, and SSR 96-9p, therefore, does not apply. In fact, the Seventh Circuit has explained that an ALJ does not need to specify in his hypothetical questions to a vocational expert how frequently an individual would need to change positions from sitting to standing. *Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008). The ALJ in his opinion indicated that Plaintiff's RFC was for "the opportunity to sit or stand as needed." (R. 21). The ALJ did not err by failing to indicate with any greater specificity how frequently Plaintiff would be required to sit or stand.

## VII. Conclusion

The ALJ properly considered Dr. Perrin's opinions. The ALJ's credibility determination was also not patently wrong. And, the ALJ's assessment of Plaintiff's RFC did not require an analysis of how frequently Plaintiff was required to alternate between sitting and standing. The final decision of the Commissioner is, therefore, **AFFIRMED.**

**SO ORDERED** the 29th day of September, 2010.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov